Cheshire,
No. 4517.

JAMES S. KELLOM, *Ex'r* v. BLANCHE L. BEVERSTOCK.

SAME *v.* MERLE W. COBLEIGH & *a.*

Argued September 5, 1956.

Decided October 2, 1956.

*Homer S. Bradley,* for the executor, furnished no brief.

*William H. Watson* (by brief and orally), for Blanche L. Beverstock.

*Howard B. Lane* and *Francis H. Ayer,* for Merle W. Cobleigh and other heirs in the sixth degree.

*Arthur Olson* (by brief and orally), for Alice M. Ware Hart and other heirs in the fifth degree.

GOODNOW, J. The first question transferred presents the issue of whether a list which was not in existence when the will, which referred to a list "I shall leave," was executed but was later prepared and in existence when a codicil to the will was executed was thereby incorporated by reference as a part of the will, the codicil having specifically ratified and confirmed the will but made no reference to a list.

The doctrine of incorporation by reference is recognized in this state. *In re Amor Estate,* 99 N. H. 417, 419. One of its basic requirements is that a document referred to in the will must be in existence when the will is executed. *Hastings* v. *Bridge,* 86 N. H. 247, 249. The claimant named in the written document in question in this case contends that since the will refers to a list disposing of various items of personal property and such a list was in existence when the will was re-executed by the last codicil made by the testatrix (*Foster* v. *Farrand,* 81 N. H. 448, 451), this list was incorporated by reference in the will.

It is the general rule that when the words of the will are considered to refer to an existing document, although there is not in fact, at the date of the will, any document to answer to such a description, but there is such a document before the codicil is executed, the will, treated as re-executed by the codicil, refers at that time to a document then in existence and the document is incorporated by reference. Anno. A. L. R. (2d) 689; 57 Am. Jur., Wills, s. 629; note 68 L. R. A. 381.

In this case, however, the will refers, not to an existing document, but to a list which "I shall leave," and another basic requirement of incorporation by reference must be considered, that is, that the document "must be made a part" of the will "by a sufficient identifying description contained therein." *Hastings* v. *Bridge*, 86 N. H. 247, 249. One element of such a description is a "reference in the will to the paper . . . as a writing . . . in existence at the time of execution of the will." 57 Am. Jur., Wills, s. 235; 3 A. L. R. (2d) 687.

Thus if the will at the time of its execution refers to a writing to be thereafter prepared, the doctrine does not operate to incorporate a document so prepared, the reason being that "a testator cannot reserve to himself the power to modify a will by a written instrument subsequently prepared and not executed in the manner required by the statute of wills." *Hastings* v. *Bridge, supra,* 249.

Nor, in the case of a will so providing, would the doctrine operate to incorporate a document actually in existence at the time the will is executed and answering the description given in the will, the reason being that the reference in the will to a writing to be thereafter prepared is not a description of an existing document and therefore not a sufficient description of the existing document to permit its identification as the one intended by the testator. Note 68 L. R. A. 376.

The same conclusion must be reached as to a will re-executed by a latter codicil in which no reference to the document is made. When the will is re-executed by the codicil, it speaks as of the date of the codicil but continues to refer to a future document. Incorporation of the existing document is not thereby accomplished. Anno. 3 A. L. R. (2d) 690; 57 Am. Jur., Wills, s. 629; note 68 L. R. A. 381, and cases reviewed. The answer to the first question is no.

The residuary clause of the will directs "that one-half of the residue be given to my heirs who shall be living at that time; and

one-half to the heirs of Winfred C. Burbank my deceased husband, who shall be living at that time, according to the statutes of the State of New Hampshire." At the decease of the testatrix, her heirs who survived her were in the fifth, sixth and seventh degree of relationship to her. The second question transferred requires a determination of whether the testatrix intended that her heirs in the sixth and seventh degree should share one-half of the residue of her estate with those in the fifth degree or whether she intended only those in the fifth degree to take.

The construction to be given to the will is governed by the intention of the testatrix which is a question of fact to be determined by this court. *White* v. *Lodge*, 100 N. H. 138, 141. In making this determination, the will itself, the findings of the Trial Court concerning the number and degree of relationship of the testatrix' heirs, and such facts as appear from the record to be undisputed are to be considered.

The heirs in the sixth and seventh degree contend that because the phrase "according to the statutes of the State of New Hampshire" follows the gift to the heirs of the testatrix' husband and is separated from it by a comma while the gift to her own heirs precedes that gift and is separated from it by a semicolon, it was the intention of the testatrix that the phrase referring to the statutes should apply only to the heirs of her husband and that her own heirs should be determined without regard to our statutes which provide that in determining the next of kin, representation beyond the fourth degree will not be allowed. RSA 561:3.

However, from the fact that no dispositive words were used after the semicolon in connection with the "one-half to" the husband's heirs, in contrast with the directive that the first mentioned half "be given" to the testatrix' heirs, it seems at least as probable that the testatrix intended that the semicolon separate only the gifts to the two sets of heirs and that the phrase referring to the statutes of this state apply to both gifts.

It seems determinative of this issue that the will was drawn for the testatrix by her attorney. If she in fact intended not only that the phrase referring to the statutes should apply only to the heirs of her husband but also that its application to those heirs should, by inference, indicate her intention that the gift to "my heirs" be given a meaning other than its ordinary one (*Colony* v. *Colony*, 97 N. H. 386, 391; *Simes* v. *Ward*, 78 N. H. 533, 534) and so informed her attorney, it seems likely that he would have expressed such

an unusual intention in more specific language than that which was used. We conclude that the testatrix intended that the phrase "according to the statutes of the State of New Hampshire" should apply in the determination of both her heirs and those of her husband. The heirs of the testatrix in the sixth and seventh degree of relationship are not heirs of the testatrix referred to in her will.

The residuary clause also provides: "If there is any residue left after the payment of the above bequests, legacies, taxes, expenses and otherwise," one-half shall be given to the testatrix' heirs "who shall be living at that time" and one-half to the heirs of her husband "who shall be living at that time." One of the heirs of the testatrix in the fifth degree who survived the testatrix deceased shortly thereafter. The parties do not agree upon the question of whether the "heirs" of the testatrix are to be determined as of the date of her death, or of "the settlement of her estate" or allowance of the executor's account. No question of the qualification of heirs of the testatrix' husband as legatees under the residuary clause is before us.

Testamentary gifts of amounts or property "left after" the payment of legacies or debts, or the death of a life tenant, commonly use the quoted language to designate the amount of the gift, rather than the time when the legatee is to be determined. *Cf. In Re Gile Estate,* 95 N. H. 270, 271. The residuary legacy disposed of by the will of this testatrix however was given to "my heirs who shall be living at that time." This phraseology not only has "overtones of futurity" (*Colony* v. *Colony,* 97 N. H. 386, 392) but designates a specific future "time" which can be taken to refer only to the time previously mentioned in the clause, which was "after the payment of the above bequests, legacies, taxes, expenses and otherwise."

Since the time of the testatrix' death was nowhere referred to in the clause, we cannot accept the view that the language used refers to it. The testatrix' intention, as disclosed by her will was that the heirs who were to take should be those "living at [the] time" when her residue should be ready for distribution. The clause suggests doubt in her mind as to whether there would be a residue. A purpose to defer identification of her beneficiaries until the residue, if any, could be forthwith distributed to heirs then living and capable of enjoying the gift reasonably accounts for the language used. We therefore hold that such was her intention. Since the record indicates that the death of one of her heirs

occurred shortly after her own death, no occasion is presented to decide whether the date of allowance of the executor's account, which presumably would determine the final expenses remaining to be paid, or the actual date of payment of such expenses, or the date of the decree of distribution (RSA 561:7) should be decisive. At all of these times, it appears that the "living" heirs of the testatrix would be the same.

*Remanded.*

All concurred.